DAN RAYFIELD
Attorney General
BRIAN SIMMONDS MARSHALL  #196129
Senior Assistant Attorney General
KATE E. MORROW #215611
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Brian.S.Marshall@doj.oregon.gov
        Kate.E.Morrow@doj.oregon.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JUDICIAL WATCH, INC.; CONSTITUTION PARTY OF OREGON; SUNI DANFORTH; and HANNAH SHIPMAN,<br><br>    Plaintiffs,<br><br>  v.<br><br>TOBIAS READ, in his official capacity as the Oregon Secretary of State; and THE STATE OF OREGON,<br><br>    Defendants. | Case No.  6:24-cv-01783<br><br>DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT |

**L.R. 7-1 CERTIFICATION**

Counsel for the Defendants conferred with counsel for Plaintiffs by videoconference about this motion on January 21, and by email on January 22–23.

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................... 1

II. BACKGROUND ................................................................................................... 2

    A. Elections in Oregon ........................................................................................ 2

    B. The National Voter Registration Act (NVRA) ............................................. 3

    C. Plaintiffs' Claims .......................................................................................... 4

        1. Voter Roll Maintenance (Count I) ........................................................ 4

        2. Public Records (Count II) ...................................................................... 5

    D. Plaintiffs and their Alleged Injuries ............................................................. 5

III. LEGAL STANDARD .......................................................................................... 7

IV. ARGUMENT ...................................................................................................... 8

    A. Plaintiffs lack standing to assert their voter roll maintenance claim (Count I)..................... 8

        1. Plaintiffs' diminished confidence in elections is not a cognizable injury-in-fact.............. 8

            a. Electoral confidence is too abstract and speculative for standing................................. 8

            b. Plaintiffs' concerns about electoral integrity are generalized grievances.................... 10

            c. Other courts have rejected similar vote dilution and voter confidence arguments. ...... 12

        2. Plaintiffs' frustration-of-mission and diversion-of-resources arguments are insufficient to confer standing under *Arizona Alliance v. Mayes* ........................................................... 13

        3. Plaintiffs have not sufficiently alleged standing for the Constitution Party's injury to its voter outreach efforts. .................................................................................................. 16

            a. Plaintiffs' alleged voter outreach injury to the Constitution Party is implausible. ....... 16

            b. The Constitution Party's voter outreach allegations are outside the zone of interests that the NVRA is designed to protect. ...................................................................... 19

    B. This Court should dismiss the public records claim because Plaintiffs did not provide the notice required by 52 U.S.C. § 20510(b)(1)–(2) (Count II)................................................. 23

V. CONCLUSION .................................................................................................... 25

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# **TABLE OF AUTHORITIES**

**Cases**                                                                                        **Page(s)**

*Aguirre v. NRC,*
    11 F. 4th 719 (9th Cir. 2021) ................................................................25

*Am. Civil Rights Union v. Martinez-Rivera,*
    166 F. Supp. 3d 779 (W.D. Tex. 2015)....................................................12

*Arizona Alliance for Retired Americans v. Mayes,*
    117 F. 4th 1165 (9th Cir. 2024) ...................................................... *passim*

*Arizona v. Inter Tribal Council of Arizona,*
    570 U.S. 1 (2013)........................................................................................3

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...............................................................................7, 19

*Ass'n Cmty. Orgs. for Reform Now v. Fowler,*
    178 F.3d 350 (5th Cir. 1999) ...................................................................22

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)....................................................................................8

*Bennett v. Spear,*
    520 U.S. 154 (1997)......................................................................19, 20, 22

*Carrico v. City & Cnty. of San Francisco,*
    656 F.3d 1002 (9th Cir. 2011) ............................................................16, 17

*Child v. Delaware County,*
    No. 24-5479, 2024 WL 4643966 (E.D. Penn. Oct. 31, 2024) ................12

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013)..............................................................................8, 10

*Drake v. Obama,*
    664 F.3d 774 (9th Cir. 2011) ...................................................................11

*Dreier v. United States,*
    106 F.3d 844 (9th Cir. 1996) .....................................................................7

*Drouillard v. Roberts,*
    No. 24-CV-06969-CRB, 2024 WL 4667163 (N.D. Cal. Nov. 4, 2024) ............2, 12

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Election Integrity Project, Inc. v. Weber*,
    113 F. 4th 1072 (9th Cir. 2024) ...................................................................13

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ...........................................................................7, 14, 15

*Gill v. Whitford*,
    585 U.S. 48 (2018) ...................................................................................10

*Green v. Bell*,
    No. 21-cv-00493-RJC-DCK, 2023 WL 2572210 (W.D.N.C. Mar. 20, 2023) .......................13

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ...........................................................................1, 15, 16

*Humane Soc'y of the U.S. v. Babbitt*,
    46 F.3d 93 (D.C. Cir. 1995) ...........................................................................9

*Jud. Watch, Inc. v. Griswold*,
    554 F. Supp. 3d 1091 (D. Colo. 2021) .......................................................10, 13, 23

*Jud. Watch, Inc. v. Ill. State Bd. of Elections*,
    No. 24 C 1867, 2024 WL 4721512 (N.D. Ill. Oct. 28, 2024) ...................................12, 14, 15

*Jud. Watch, Inc. v. King*,
    993 F. Supp. 2d 919 (S.D. Ind. 2012) .............................................................13, 16

*Jud. Watch, Inc. v. Pennsylvania*,
    524 F. Supp. 3d 399 (M.D. Pa. 2021) .................................................................24

*Krottner v. Starbucks Corp.*,
    628 F.3d 1139 (9th Cir. 2010) .........................................................................9

*Lake v. Fontes*,
    83 F. 4th 1199 (9th Cir. 2024) ...................................................................9, 10, 13

*Lance v. Coffman*,
    549 U.S. 437 (2007) ...................................................................................11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ...........................................................................19, 20, 22

*Lujan v. Def. of Wildlife*,
    504 U.S. 555 (1992) ....................................................................................8, 9

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) .........................................................................7

Page iii

*Munns v. Kerry,*
  782 F.3d 402 (9th Cir. 2015) ................................................................10

*Mussi v. Fontes,*
  No. CV-24-01310-PHX-DWL, 2024 WL 4988589 (D. Ariz. Dec. 5, 2024) ...............2, 10, 16

*Nat'l Council of La Raza v. Cegavske,*
  800 F.3d 1032 (9th Cir. 2015) ........................................................23, 24

*Pub. Int. Legal Found. v. Boockvar,*
  370 F. Supp. 3d 449 (M.D. Pa. 2019) .....................................................23

*Republican Nat'l Comm. v. Aguilar,*
  No. 24-CV-00518-CDS-MDC, 2024 WL 4529358 (D. Nev. Oct. 18, 2024)..........2, 12, 15, 16

*Republican Nat'l Comm. v. Benson,*
  No. 1:24-cv-262, 2024 WL 4539309 (W.D. Mich. Oct. 22, 2024) ...................12, 16

*Thielman v. Fagan,*
  No. 3:22-CV-01516-SB, 2023 WL 4267434 (D. Or. June 29, 2023).....................11

*Thielman v. Griffin-Valade,*
  No. 23-35452, 2023 WL 8594389 (9th Cir. Dec. 12, 2023)...............................10

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021) ............................................................................7

*Whitehead v. Fagan,*
  369 Or. 112 (2021)................................................................3, 9, 17

**Constitutional Provisions**

Eleventh Amendment.............................................................................1

**Federal Statutes**

7 U.S.C. § 2305(c) .............................................................................22

15 U.S.C. § 797(b)(5) .........................................................................22

16 U.S.C. § 1540(g) ...........................................................................22

42 U.S.C. § 9124(a) ...........................................................................22

52 U.S.C. § 20501 .............................................................................21

52 U.S.C. § 20507(a)(4).................................................................1, 4, 5, 19

52 U.S.C. § 20507(b) ..........................................................................4

Page iv

52 U.S.C. § 20507(c) ................................................................................4

52 U.S.C. § 20507(d) ............................................................................4, 19

52 U.S.C. § 20507(*i*) ........................................................................1, 4, 23

52 U.S.C. § 20510 ............................................................................4, 21, 23

52 U.S.C. § 21083(a)(1)(A) ..................................................................3

**State Statutes**

ORS 246.110 ........................................................................................2

ORS 246.120 ........................................................................................2

ORS 247.012(8) ....................................................................................3

ORS 247.013(7) ...............................................................................3, 9, 17

ORS 247.019 ........................................................................................3

ORS 247.292 ........................................................................................3

ORS 247.296 ........................................................................................3

ORS 247.555 ........................................................................................3

ORS 247.563 ........................................................................................3

ORS 247.570 ........................................................................................3

ORS 247.580 ........................................................................................3

ORS 254.470(2) ...............................................................................3, 9, 17

**Rules**

Fed. R. Civ. P. 12(b)(1) .......................................................................1, 7

Fed. R. Civ. P. 12(b)(6) ...................................................................1, 7, 23

Fed. R. Civ. P. 12(c) ...........................................................................1

Fed. R. Civ. P. 12(h)(3) .......................................................................1

Fed. R. Civ. P. 25(d) ...........................................................................1

Fed. R. Civ. P. 26(c)(1) ........................................................................25

Page v

Fed. R. Civ. P. 37(a)(1) .................................................................................................25

L.R. 7-1 ..........................................................................................................................25

**Other Authorities**

*Black's Law Dictionary* (12th ed. 2024) ......................................................................22

*Merriam-Webster Dictionary* (online ed. 2024) ...........................................................22

Portland State University Population Research Center, Population Estimates for
    Oregon and Counties (Vintage 2024) ......................................................................18

U.S. Census Bureau, Citizen Voting Age Population by Race and Ethnicity (Jan.
    23, 2024) ...................................................................................................................18

U.S. Census Bureau, Using 1-Year or 5-Year American Community Survey Data
    (Sept. 2020) ..............................................................................................................18

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## MOTION

Defendants Oregon Secretary of State[1] and the State of Oregon[2] (collectively, the "Secretary") move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This motion is supported by the following Memorandum of Law and the papers filed in this case, including the declaration of Brian Simmonds Marshall and its attachments (ECF 11).

## I.    INTRODUCTION

Plaintiffs claim that the Secretary of State violated two requirements of the National Voter Registration Act (NVRA): to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" (the list maintenance provision), 52 U.S.C. § 20507(a)(4), and to "make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" (the public records claim), 52 U.S.C. § 20507(*i*)(1). Both claims should be dismissed.

Plaintiffs lack standing to assert their list maintenance claim. Plaintiffs allege that the Secretary's purported NVRA violation causes them to lack confidence in elections, but those allegations are too abstract and too generalized to support standing. *See* § IV.A.1, below. Judicial Watch alleges that they have diverted resources to seek to enforce the NVRA's mandates in Oregon, but that allegation also cannot meet the injury-in-fact requirements under *Havens Realty*[3] and the Ninth Circuit's recent decision in *Arizona Alliance for Retired Americans v.*

---

[1] Secretary of State Tobias Read took office on January 6, 2025, and therefore "is automatically substituted as a party" for his predecessor. *See* Fed. R. Civ. P. 25(d).

[2] Suit against the State of Oregon is barred by sovereign immunity and the Eleventh Amendment. If this motion is denied, the State will assert that defense in its answer and promptly move for the State's dismissal under Federal Rules of Civil Procedure 12(c) and 12(h)(3).

[3] *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).

Page 1 -    DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
BM2/jt3

*Mayes.*[4] *See* § IV.A.2, below. The Constitution Party alleges that it is injured because it wastes resources on voter outreach using Oregon's voter list, but that allegation fails too. The Constitution Party's interest in campaigning is outside of the zone of interests the NVRA was enacted to protect. *See* § IV.A.3.b, below. The Constitution Party's claim of injury from unneeded voter outreach is also implausible. The gravamen of Plaintiffs' complaint is that Oregon's registration list includes too many voters designated as inactive, but inactive voters are identified on the voter list and never receive ballots. As such, the Constitution Party's allegation that it wasted time mistakenly contacting inactive voters is implausible. *See* § IV.A.3.a, below. Therefore, this Court should join the other district courts in this Circuit that have unanimously rejected NVRA list maintenance claims for lack of standing.[5]

Plaintiffs' claim that the Secretary of State violated the NVRA's public records provisions must be dismissed for a different reason: Plaintiffs failed to give the Secretary 90 days' notice of that alleged violation, as the NVRA requires. Plaintiffs repeatedly wrote the Secretary to threaten suit on their list maintenance claims. But Plaintiffs never gave notice about an NVRA public records claim. That alone requires dismissal of Plaintiffs' public records claim.

Accordingly, the complaint should be dismissed in its entirety.

## II.    BACKGROUND

### A.    Elections in Oregon

The Secretary of State is Oregon's chief elections officer. ORS 246.110.[6] Accordingly, he must "implement … a single, uniform, official, centralized, interactive computerized statewide

---

[4] 117 F. 4th 1165, 1171 (9th Cir. 2024).

[5] *See Mussi v. Fontes*, No. CV-24-01310-PHX-DWL, 2024 WL 4988589, at *5 (D. Ariz. Dec. 5, 2024); *Republican Nat'l Committee v. Aguilar*, No. 24-CV-00518-CDS-MDC, 2024 WL 4529358, at *2 (D. Nev. Oct. 18, 2024); *Drouillard v. Roberts*, No. 24-CV-06969-CRB, 2024 WL 4667163, at *3 (N.D. Cal. Nov. 4, 2024).

[6] In that role, the Secretary of State also has oversight responsibilities for the county election officials. *See* ORS 246.120.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

voter registration list ….” 52 U.S.C. § 21083(a)(1)(A) (assigning responsibility to “the chief State election official”); *see also* ORS 247.019.

Once a voter registers to vote, their registration is “active.” *See* ORS 247.012(8). In general, “whenever it appears to the county clerk that an elector needs to update the elector’s registration or that the elector has changed residence address to another county,” ORS 247.563(1), the county clerk mails the voter a notice, ORS 247.563(2), and considers their registration “inactive until the elector updates the registration, the registration is canceled or the clerk determines that the registration should be considered active,” ORS 247.563(3). In Oregon, “voters whose registrations are inactive are not eligible to vote….” *Whitehead v. Fagan*, 369 Or. 112, 115 (2021). Consequently, inactive voters do not receive a ballot to vote in Oregon’s vote-by-mail elections. ORS 247.013(7), 254.470(2).

When a county official learns that a voter has moved or has died (including because a mail ballot is returned undeliverable), the county official must update the registration record, including sending notice to the voter. *See* ORS 247.292, 247.296, 247.563, 247.570. The county official must retain the notices for two years. ORS 247.580. Registrations may also be cancelled when the voter dies or requests cancellation, when the clerk has “written evidence that the elector has registered to vote in another state[,]” or, when two general elections have occurred since the clerk sent notice that the voter’s registration is inactive and the voter has not voted or updated their registration. ORS 247.555.

**B.    The National Voter Registration Act (NVRA)**

The NVRA “requires each State to permit prospective voters to ‘register to vote in elections for Federal office’ by any of three methods: simultaneously with a driver’s license application, in person, or by mail.” *Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1, 5 (2013). The NVRA also requires that each state:

> conduct a general program that makes a reasonable effort to
> remove the names of ineligible voters from the official lists of
> eligible voters by reason of—

Page 3 -    DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
BM2/jt3

> > (A) the death of the registrant; or
>
> > (B) a change in the residence of the registrant, in accordance with subsections (b), (c), and (d)….

52 U.S.C. § 20507(a)(4). Subsections 20507(b), (c), and (d), in turn, specify procedural requirements for "[c]onfirmation of voter registration," "[v]oter removal programs," and "[r]emoval of names from voting rolls," respectively.

The U.S. Attorney General may enforce the NVRA. 52 U.S.C. § 20510(a). The NVRA may also be enforced by "a person who is aggrieved by a violation" if the plaintiff "provide[s] written notice of the violation to the chief election official of the State involved" 90 days in advance of filing suit. 52 U.S.C. § 20510(b). This waiting period is shortened or eliminated "[i]f the violation occurred" within 120 days "of an election for Federal office…." 52 U.S.C. § 20510(b)(2)–(3).

## C.    Plaintiffs' Claims

Plaintiffs filed their Complaint on October 23, 2024. Compl., ECF No. 1. The Secretary filed a motion to dismiss on December 30, 2024. Def.'s Mot. to Dismiss, ECF No. 10. Plaintiffs filed an Amended Complaint on January 10, 2025. Am. Compl., ECF No. 12.

Both complaints alleged the same two claims: (1) that Defendants violated 52 U.S.C. section 20507(a)(4) by failing to conduct a general program that makes reasonable efforts to cancel registrations of voters who have become ineligible to vote, and (2) that Defendants violated 52 U.S.C. section 20507(*i*) by failing to provide records to Plaintiffs about the voter roll maintenance programs.

### 1.    Voter Roll Maintenance (Count I)

Plaintiffs claim that Defendants have failed "to conduct a general program that makes a reasonable effort to cancel the registrations of Oregon voters who have become ineligible by reason of a change of residence." Am. Compl. ¶ 129. Plaintiffs allege that Oregon has "the highest known inactive voter registration of any state in the nation." *Id.* ¶ 50. Thus, they allege, "inactive registration rates … are so high that they indicate a statewide failure to conduct a

Page 4 -    DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
BM2/jt3

general program that makes a reasonable effort to cancel the registrations of voters who have become ineligible by reason of a change of residence….” *Id.* ¶ 52.

To redress the alleged injuries caused by the NVRA list maintenance violation, Plaintiffs seek declaratory and injunctive relief. *Id.* at 25–26. They seek an order requiring Defendants to develop and implement a program to remove registrations of ineligible registrants from the voter rolls in Oregon. *Id.* at 26.

### 2.    Public Records (Count II)

Judicial Watch's August 4, 2023, letter notifying the Secretary of State of alleged NVRA violations included a request for seven categories of documents. Am. Compl. ¶ 73. On September 15, 2023, an OCVR Support Desk Analyst emailed Judicial Watch, estimating that complying with one aspect of that request—providing the names and addresses of each Oregon voter who received a registration confirmation notice and their responses to the notice—would require 5,000 hours of labor to complete. *Id.* ¶ 74.

Judicial Watch did not respond to that email, and its subsequent correspondence did not address the records requested or the Secretary of State's cost estimate. *See* Marshall Decl., Attach. 1.

### D.    Plaintiffs and their Alleged Injuries

Plaintiffs allege that they are "persons aggrieved" by these alleged violations of the NVRA, 52 U.S.C. § 20507(a)(4). Am. Compl. ¶ 128.

Plaintiffs allege that they are concerned about the integrity of Oregon elections, *id.* ¶ 82, that they have lost confidence in Oregon elections, *id.* ¶ 83, that Judicial Watch has spent resources investigating the alleged NVRA violation, *id.* ¶ 88, and that the Constitution Party has had to spend more resources conducting voter outreach than it otherwise would have due to the alleged violation, *id.* ¶¶ 100–101.

Specifically as to Judicial Watch, Plaintiffs allege that Judicial Watch's mission is "to promote transparency, integrity, and accountability in government and fidelity to the rule of

Page 5 -    DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
BM2/jt3

law," and that "[p]rotecting the voting rights of Oregon members who are lawfully registered to vote in Oregon is germane" to its mission. *Id.* ¶¶ 80, 84. It pursues that mission through public records requests and litigation. *Id.* ¶ 80. Plaintiffs allege that Defendants' violation of the NVRA "burdens the federal and state constitutional rights to vote" of the members of Judicial Watch. *Id.* ¶ 83. That "burden" is allegedly caused "by undermining their confidence in the integrity of the electoral process, discouraging their participation in the democratic process, and instilling in them the fear that their legitimate votes will be nullified or diluted by unlawful ones." *Id.* ¶ 83. It further alleges that its Oregon members are "concerned that failing to comply with these obligations impairs the integrity of elections by increasing the opportunity for ineligible voters to receive and cast ballots for federal elections in Oregon." *Id.* ¶ 82. In pursuit of its concerns about the integrity of Oregon elections, Judicial Watch "expended substantial resources … investigating Defendants' programs concerning their NVRA voter list maintenance obligations, communicating with Oregon officials about addressing non-compliance, and communicating with concerned members about these efforts." *Id.* ¶ 88.

Specifically as to the Constitution Party, Plaintiffs allege that the Constitution Party is injured by being required to spend more time sorting through the voter registration rolls when conducting voter outreach. *Id.* ¶ 101. The Constitution Party "organizes, selects, and promotes the election of party standard bearers and others who promote its beliefs." *Id.* ¶ 95. To achieve those goals, the Constitution Party "relies on Oregon's voter rolls to identify in-state voters and to contact them and encourage them to assist the candidates it supports by learning about the party and its beliefs, volunteering, organizing, contributing, and voting." *Id.* ¶ 96. Plaintiffs allege that the Constitution Party's "ability to contact eligible Oregon voters is interfered with and made more difficult" by Defendants' actions because the number of "outdated and ineligible registrations" requires the Constitution Party to "waste significant time, effort, and money trying to contact voters, both by mail and in person, who are listed on the rolls but who no longer live at the registered address or who are deceased." *Id.* ¶¶ 100–101.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## III.    LEGAL STANDARD

"[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (citations omitted). To establish subject-matter jurisdiction, a plaintiff must show that they "'(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Ariz. All. for Retired Ams. v. Mayes*, 117 F. 4th 1165, 1171 (9th Cir. 2024) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek…." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). When an organization asserts that it has standing based on its own alleged injuries, it "must meet the traditional Article III standing requirements." *Arizona All.*, 117 F. 4th at 1172; *see FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393–96 (2024) (holding that claims that an organization's mission has been "impaired" or that it has "divert[ed] its resources in response to a defendant's actions" are insufficient to confer organizational standing). A court may consider evidence outside the pleadings to resolve factual disputes related to the court's subject-matter jurisdiction. *See Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) ("[A] Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency….") (internal quotation omitted).

On a motion to dismiss for failure to state a claim, courts presume the truth of allegations in the complaint and construe them in the light most favorable to the nonmoving party. Fed. R. Civ. P. 12(b)(6). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is plausible on its face only if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is "'not bound to accept as true a legal conclusion

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## IV.    ARGUMENT

**A.    Plaintiffs lack standing to assert their voter roll maintenance claim (Count I).**

    **1.    Plaintiffs' diminished confidence in elections is not a cognizable injury-in-fact.**

Plaintiffs lack Article III standing. Plaintiffs' allegations that they are concerned about election integrity and have lost confidence in elections do not establish that they suffered a cognizable injury-in-fact.

An "injury in fact" is the violation of a legally protected interest that is concrete, particularized, and "actual or imminent." *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992). A "concrete" injury is one that is "'not abstract.'" *Arizona All.*, 117 F. 4th at 1173 (quoting *Hippocratic Med.*, 602 U.S. at 381). A "particularized" injury is one that "affects the plaintiff individually, not in a generalized manner." *Id.* A "real or imminent" injury is one that "has occurred or will likely occur soon." *Id.*

    **a.    Electoral confidence is too abstract and speculative for standing.**

A cognizable injury-in-fact must be "actual or imminent," and not speculative. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Allegations of possible future injury are insufficient to establish the actual or imminent requirement. *Id*. When an injury depends on a "speculative chain of possibilities," it is not "certainly impending or ... fairly traceable." *Id.* at 414.

Plaintiffs' allegations of injury are speculative. Therefore, they do not establish the "actual or imminent" requirement of Article III standing. One harm that Plaintiffs allege is that they are concerned that ineligible voters will cast ballots in Oregon, therefore impairing the integrity of Oregon elections. Am. Compl. ¶ 82. This allegation is facially nonsensical. The premise of Plaintiffs' complaint is that Oregon "is failing to remove old, *inactive* registrations"

Page 8 -    DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
BM2/jt3

in violation of NVRA. Am. Compl. ¶ 55 (emphasis added). But "voters whose registrations are inactive are not eligible to vote," *Whitehead*, 369 Or. at 115, and do not receive ballots, ORS 247.013(7), 254.470(2). Thus, inactive voters, by definition, cannot cast ballots in Oregon.

Plaintiffs' election fraud allegation is also speculative because it requires each of a chain of implausible events to actually occur: For injury to materialize, an inactive voter must receive a ballot, that person must be ineligible to vote, that person must submit their ballot, a county clerk must mistakenly identify the ballot as the ballot of an active voter, and the vote must be counted. Because Plaintiffs' injury depends on an assumption that each of those events will imminently occur, Plaintiffs' injury is too speculative to confer standing. *See Lake v. Fontes*, 83 F. 4th 1199, 1204 (9th Cir. 2024) (dismissing an "election manipulation" case for lack of standing because the complaint relied on a "long chain of hypothetical contingencies"). Moreover, Plaintiffs allege only that they are concerned about the integrity of Oregon elections and the potential "opportunity" for ineligible voters to vote in Oregon. Am. Compl. ¶ 82. Plaintiffs do not allege that any inactive voter has received a ballot, nor that any inactive voter actually has voted. Concerns about ineligible voters possibly taking advantage of a hypothetical opportunity to vote unlawfully are insufficient to establish an actual or imminent injury.

Another harm that Plaintiffs allege is that their own rights to vote have been burdened by "undermining their confidence in the integrity of the electoral process, discouraging their participation in the democratic process, and instilling in them the fear that their legitimate votes will be nullified or diluted by unlawful ones." Am. Compl. ¶ 83. That alleged harm is speculative because it rests on the assumption of a possible future injury. Plaintiffs have not alleged that their votes have been diluted by unlawful votes, only that they are afraid of that possibility happening in the future. That is insufficient to establish an "actual or imminent" injury. *See Lujan*, 504 U.S. at 560; *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010) (suggesting that a fear of future harm based only on the risk that the harm would occur, not tied to a credible threat, would not alone establish standing); *Humane Soc'y of the U.S. v. Babbitt*, 46 F.3d 93, 98 (D.C.

Page 9 -    DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Cir. 1995) ("[G]eneral emotional 'harm,' no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes."). Plaintiffs' "undermined confidence" in the electoral process allegation is based on that fear of vote dilution and is thus also speculative. *See* Am. Compl. ¶83; *see also Clapper*, 568 U.S. at 418 ("[The] subjective fear of surveillance does not give rise to standing."); *Thielman v. Griffin-Valade*, No. 23-35452, 2023 WL 8594389, at *1 (9th Cir. Dec. 12, 2023), *cert. denied,* 144 S. Ct. 2562 (2024) ("Plaintiffs allege only that they suffer a 'crisis of confidence' in Oregon's voting systems, which is the same 'speculative' grievance that we found insufficient to confer standing in *Lake*."); *Munns v. Kerry*, 782 F.3d 402, 410 (9th Cir. 2015) (plaintiff's "deterrence from seeking employment is ultimately based on his fear of an injury that we have already determined is too speculative to confer standing."); *Mussi v. Fontes*, No. CV-24-01310-PHX-DWL, 2024 WL 4988589, at *5 (D. Ariz. Dec. 5, 2024) (dismissing an NVRA voter list maintenance claim based on a vote-dilution argument for lack of standing because of an "overreliance on speculative contingencies"); *Jud. Watch, Inc. v. Griswold*, 554 F. Supp. 3d 1091, 1103 (D. Colo. 2021) ("This alleged injury—that noncompliance with the law could dilute the individual plaintiffs' votes—is also hypothetical. … The possibility that the individual plaintiffs' votes—and every other voter's vote in equal measure—*could* be diminished because a fraudulent vote *could* be cast at some election in the future is insufficient to allege a concrete and particularized injury."). The "discouraged participation" claim suffers the same shortcomings—the alleged harm is dependent on a fear of vote dilution coming to fruition through a series of potential events. The harms that Plaintiffs allege are thus insufficient to establish an "actual" or "imminent" injury, and they cannot confer Article III standing.

> **b.    Plaintiffs' concerns about electoral integrity are generalized grievances.**

To allege a cognizable injury-in-fact, Plaintiffs must plead a particularized injury that "affect[s] the plaintiff in a personal and individual way." *Gill v. Whitford*, 585 U.S. 48, 49 (2018) (internal quotation marks and citation omitted). A plaintiff must plead an injury that is distinct

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

from an injury that could be claimed by any member of the general public. *Lance v. Coffman*, 549 U.S. 437, 439 (2007) ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.").

Plaintiffs' allegations of injury are generalized grievances that cannot meet the "particularized" requirement of Article III standing. Plaintiffs present no facts that their own voting rights have been burdened. Instead, they present their general concerns about the integrity of Oregon elections. Am. Compl. ¶¶ 82–83. The allegations that Plaintiffs are concerned for "the state of the nation's voter registration rolls" are not specific to Plaintiffs. *Id.* ¶ 82. Those allegations do not demonstrate how these Plaintiffs are injured in a way that any other voter is not. *See Drake v. Obama*, 664 F.3d 774, 782 (9th Cir. 2011) ("[Plaintiff] has no greater stake in this lawsuit than any other United States citizen. The harm he alleges is therefore too generalized to confer standing."); *Thielman v. Fagan*, No. 3:22-CV-01516-SB, 2023 WL 4267434, at *3 (D. Or. June 29, 2023), *aff'd sub nom. Thielman v. Griffin-Valade*, 2023 WL 8594389 ("Plaintiffs' alleged injury—their lack of confidence in Oregon's election system—is not particularized to the plaintiffs in this litigation."). The allegation that the Secretary's alleged NVRA violation "impairs the integrity of elections by increasing the opportunity for ineligible voters to receive and cast ballots for federal elections in Oregon" is similarly generalized. Am. Compl. ¶ 82. The allegations that Plaintiffs' rights to vote have been burdened "by undermining [Plaintiffs'] confidence in the integrity of the electoral process, discouraging their participation in the democratic process, and instilling in them the fear that their legitimate votes will be nullified or diluted by unlawful ones" are also generalized grievances. *Id.* ¶ 83. Plaintiffs thus raise only "generally available grievance[s] about government" that any member of the public could raise, which are not cognizable as an injury-in-fact under Article III. *Lance*, 549 U.S. at 439.

Page 11 -  DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
BM2/jt3

        c.      **Other courts have rejected similar vote dilution and voter confidence arguments.**

Other courts have considered similar voter confidence and vote dilution arguments in the NVRA voter-list maintenance context and rejected them. Courts have explained that vote dilution claims are generalized grievances that do not support standing. *Republican Nat'l Comm. v. Aguilar*, No. 24-CV-00518-CDS-MDC, 2024 WL 4529358, at *4 (D. Nev. Oct. 18, 2024) (plaintiff's "fear of vote dilution can be raised by every and any voter in the State of Nevada. Any reduction in individual voting power due to independent acts of voter fraud are felt equally by all voters in Nevada and do not present an individual and personal injury ... required for Article III standing." (internal citation omitted)); *Child v. Delaware County*, No. 24-5479, 2024 WL 4643966, at *4 (E.D. Penn. Oct. 31, 2024) (describing an alleged harm based on "the distribution and possible collection of unqualified voter ballots" as "exactly the type of generalized grievance that courts throughout this country have consistently dismissed for lack of standing"); *Drouillard v. Roberts*, 24-CV-06969-CRB, 2024 WL 4667163, at *4 (N.D. Cal. Nov. 4, 2024) ("Because [p]laintiffs have no particularized injury and sue only to have the Government act in accordance with law, they lack standing." (internal quotation marks and citation omitted)). Courts have also rejected plaintiffs' standing arguments regarding diminished voter confidence in NVRA list-maintenance cases. *See Republican Nat'l Comm. v. Benson*, No. 1:24-cv-262, 2024 WL 4539309, at *9 (W.D. Mich. Oct. 22, 2024) ("[T]he 'fear' upon which the individual [p]laintiffs rely is an insufficient basis for properly invoking federal-court jurisdiction."); *Aguilar*, 2024 WL 4529358, at *6 ("Undermined confidence in the integrity of Nevada elections is too speculative."); *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24 C 1867, 2024 WL 4721512, at *5 (N.D. Ill. Oct. 28, 2024) (rejecting decreased confidence and vote dilution arguments and "agree[ing] with the majority view that generalized concerns over vote dilution do not give rise to standing"); *Am. Civil Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 789 (W.D. Tex. 2015) (finding no error in magistrate judge's determination that "undermined voter confidence and the risk of vote dilution[] are speculative").

Page 12 -  DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

A few courts have agreed with the arguments that Plaintiffs now raise and allowed suits to go forward, but those courts are in the minority. *See Green v. Bell*, No. 21-cv-00493-RJC-DCK, 2023 WL 2572210, at *4 (W.D.N.C. Mar. 20, 2023); *Griswold*, 554 F. Supp. 3d at 1103–04; *Jud. Watch, Inc. v. King*, 993 F. Supp. 2d 919, 924 (S.D. Ind. 2012).

Notably, no court in the Ninth Circuit has adopted Plaintiffs' position on standing in an NVRA list-maintenance suit. Only the majority approach is consistent with Ninth Circuit case law. *See Election Integrity Project, Inc. v. Weber*, 113 F. 4th 1072, 1098 n.13 (9th Cir. 2024) ("To our knowledge, every court to have considered a 'vote dilution' claim analogous to the one raised by [plaintiff] in this case has rejected the claim.") (collecting cases). In other elections cases, the Ninth Circuit has stated that "a generalized interest in seeing that the law is obeyed [is] an interest that is neither concrete nor particularized." *Lake*, 83 F. 4th at 1203 (internal quotation marks and citations omitted). The interest Plaintiffs allege here is indistinguishable from the interest that the Ninth Circuit rejected: that is, a "fear that their legitimate votes will be nullified or diluted by unlawful ones." Am. Compl. ¶ 83. As such, it fails to satisfy the standing requirement that Plaintiffs must "show a distinct harm to any group of voters over any other." *Election Integrity Project, Inc.*, 113 F. 4th at 1089 n.13; *id.* at 1087 ("Vote dilution in the *legal* sense occurs only when disproportionate weight is given to some votes over others within the same electoral unit."). Thus, as in *Lake*, Plaintiffs' allegation cannot qualify as an independent injury in fact. *See Lake*, 83 F. 4th at 1204 ("This is the kind of speculation that stretches the concept of imminence beyond its purpose." (internal quotation marks and citations omitted)). Because Plaintiffs have failed to allege a cognizable injury based on vote dilution, they cannot establish standing under Ninth Circuit precedents.

2. **Plaintiffs' frustration-of-mission and diversion-of-resources arguments are insufficient to confer standing under *Arizona Alliance v. Mayes*.**

The "injury in fact" standard is not satisfied by allegations that a defendant's actions have "frustrate[d] an organization's abstract mission" or injured "an organization's general legal,

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

moral, ideological, and policy concerns." *Arizona All.*, 117 F. 4th at 1177 (internal quotation marks omitted).[7] An injury in fact exists only if the organization has, or will imminently, suffer a concrete harm that "directly and actually affect[s] the organization's 'core' activities, not merely its 'abstract social interests.'" *Id.* The injury in fact standard is not satisfied by allegations that an organization has diverted its resources to oppose a defendant's actions. *Id.* ("[W]e must scrutinize the harm an organization asserts to ensure that the organization has not tried to 'spend its way into standing simply by expending money to gather information and advocate against the defendant's actions.'" (quoting *Hippocratic Med.*, 602 U.S. at 394)). To establish an injury-in-fact, an organization must meet "the traditional three-part Article III standing analysis: (1) injury-in-fact, (2) causation, and (3) redressability." *Id.* at 1178.

Plaintiffs cannot establish Article III standing for Count I because they allege standing based only on diversion-of-resources and frustration-of-mission theories. Plaintiffs allege that they expended resources to counteract the alleged NVRA violations that were beyond their normal operations for monitoring NVRA compliance. Am. Compl. ¶¶ 88–89. Plaintiff Judicial Watch alleges that it fulfills its mission—promoting transparency, integrity, and accountability in government—through public records requests and litigation. *Id.* ¶ 80. Alleging that they "expended substantial resources" to investigate NVRA compliance and "waste[d] significant time, effort, and money trying to contact voters" is equivalent to arguing that, because of Defendants' alleged NVRA violations, Plaintiffs had to spend more time and money holding the government accountable and reaching out to voters—in other words, to spend more resources fulfilling its mission because Defendants' actions frustrated its mission. *See* Am. Compl. ¶ 88. Those allegations amount to Plaintiffs attempting to "spend [their] way into standing," which is insufficient to establish an injury-in-fact. *Hippocratic Med.*, 602 U.S. at 394; *see also Jud.*

---

[7] In *Arizona Alliance*, 117 F. 4th at 1177–78, the Ninth Circuit overruled its prior organizational standing cases that permitted standing based on a "diversion-of-resources" or "frustration-of-mission" theory as irreconcilable with the Supreme Court's decision in *Hippocratic Medicine*.

Page 14 -  DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
BM2/jt3

*Watch, Inc.*, 2024 WL 4721512, at *7 (holding that organizational plaintiffs did not have standing because allegations that NVRA maintenance violations "ma[de] it more difficult for [plaintiffs] to contact Illinois voters falls short of showing that [the violations] 'perceptibly impaired' their advocacy interests."); *Aguilar*, 2024 WL 4529358, at *6–8 (rejecting similar arguments regarding resources spent on voter outreach).

Unlike the diversion-of-resources allegations in *Havens Realty*, Plaintiffs here have not alleged that they diverted resources away from their pre-existing activities (public records requests and litigation), but rather, that they have had to spend more resources to fulfill their advocacy mission. In other words, Plaintiffs allege that their mission has been frustrated, and therefore, they had to spend time and money fighting government action that they allege is unlawful. Am. Compl. ¶¶ 90, 92–93, 126. That kind of combined frustration-of-mission and diversion-of-resources argument is like the argument that the Supreme Court rejected in *Hippocratic Med.*, 602 U.S. at 394; *see also Arizona All.*, 117 F. 4th at 1177 ("In *Havens Realty*, it was critical that HOME was not only an issue-advocacy organization, but also operated a housing counseling service. In other words, [the organization] had standing because receiving false information about available housing directly harmed [its] core activity—counseling its clients on housing availability." (internal quotation marks, alterations, and citations omitted)). Although Plaintiffs disguise their allegations as an already-incurred loss of time and money in counteracting the alleged NVRA violations, the harms they allege are more akin to "a setback to the organization's abstract social interests," which alone is insufficient to confer standing. *Havens Realty*, 455 U.S. at 379; *see also Jud. Watch, Inc.*, 2024 WL 4721512, at *6 (holding that Judicial Watch did not have standing to bring NVRA maintenance claim because its "diversion of resources did not interfere with its 'core business activities....'" (quoting *Hippocratic Med.*, 602 U.S. at 395)). Because those are the only theories upon which Plaintiffs assert organizational standing, this Court should reject them and find that Plaintiffs failed to demonstrate standing on Count I.

Page 15 -  DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
BM2/jt3

Following *Arizona Alliance*, other district courts in the Ninth Circuit have also rejected the arguments that plaintiffs now raise. *Mussi*, 2024 WL 4988589, at *9 (rejecting a diversion-of-resources and frustration-of-mission standing argument in an NVRA voter maintenance case based on *Arizona Alliance*); *Aguilar*, 2024 WL 4529358, at *6 ("Following the principles set forth in *Hippocratic Medicine* and applying [*Arizona Alliance*], I find that the organizational plaintiffs fail to allege an injury-in-fact."). Other courts around the country have also rejected diversion-of-resources and frustration-of-mission arguments after *Hippocratic Medicine*. *E.g.*, *Benson*, 2024 WL 4539309, at *12 ("[N]either the allegations about activities in which the [the political party] normally engages nor the allegations about [the party's] resources having been diverted to address speculative fears of future harm are sufficient to establish that [the party] has standing to pursue its NVRA claim."). Although other district courts have found *Havens Realty* standing for NVRA list maintenance, those decisions all occurred before the Supreme Court issued its decision in *Hippocratic Medicine*. *See, e.g.*, *King*, 993 F. Supp. 2d at 925 (finding that plaintiff had standing based on a frustration-of-mission-argument). Those arguments are now foreclosed by *Hippocratic Medicine* and *Arizona Alliance*.

### 3. Plaintiffs have not sufficiently alleged standing for the Constitution Party's injury to its voter outreach efforts.

#### a. Plaintiffs' alleged voter outreach injury to the Constitution Party is implausible.

Allegations of injury must be plausible to establish Article III standing. *See Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1007 (9th Cir. 2011) (discussing the need for a complaint "to demonstrate a plausible injury in fact," concluding that the allegations were insufficient "as a matter of common sense"). Plaintiffs' allegations that the Constitution Party has had to spend significant time engaging in voter outreach, Am. Compl. ¶ 126, and that the Secretary's alleged NVRA violations inhibited its ability to contact voters, *id.* ¶ 100, are not sufficient to allege an injury.

Page 16 -  DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
BM2/jt3

Voter lists distinguish between active and inactive voters. *See* Marshall Decl., Attach. 2 at 2 (Request for Voter List). Plaintiffs do not allege otherwise. Inactive voters do not receive ballots unless they update their registrations (*see* ORS 247.013(7), 254.470(2)); until then, they are not eligible to vote in Oregon. *See Whitehead*, 369 Or. at 115. Thus, if a party seeks to "identify in-state voters" who are currently eligible to vote, it should not contact inactive voters. For that reason, the Constitution Party cannot show it has been injured by too many individuals remaining on the "inactive voter lists." Am. Compl. ¶ 126. Thus, the Constitution Party cannot plausibly allege they have been harmed by using the list of inactive voters.

To the extent the Constitution Party relies on harm from allegedly "outdated and ineligible registrations … on [Oregon's] *active* … voter lists" (emphasis added), the complaint does not allege facts sufficient to make that allegation plausible. *See Carrico*, 656 F.3d at 1007. The complaint alleges that "Oregon's inactive registration rate … is the highest known inactive registration rate in the nation." Am. Compl. ¶ 50. A high percentage of inactive voters also explains why, under the complaint's allegations, Oregon has "high overall registration rates" (i.e., a total number of active *and* inactive registrations). *Compare* Am. Compl. ¶ 53 (focusing on "high inactive registration rates") *with id.* ¶¶ 37–42 (alleging high total number of registered voters). The complaint's allegations that Oregon officials reported few cancellations to U.S. Election Assistance Commission (EAC) (*id.* ¶¶ 26–29) also cannot show that they were harmed by outdated lists of active voters. This is because the EAC does not ask whether voters have been

Page 17 -  DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

made inactive (only cancelled).[8] Thus, responses to EAC's questions do not demonstrate anything about the list of *active* voters.

Plaintiffs' Amended Complaint adds only one allegation to remedy this deficiency: the results of their October 2024 "study" comparing "active registrations" with "the most recent five-year American Community Survey estimates from the Census Bureau of the citizen voting-age populations of Oregon's counties." Am. Compl. ¶ 39. These Census estimates covered the 60-month period from 2018 to 2022.[9] Plaintiffs allege they compared those figures to voter registration figures as of October 2024. The amended complaint does not allege Plaintiffs' study accounted for the significant population growth in certain Oregon counties over that time.[10] Taking as true the allegation that more active voters were registered in 2024 than the 60-month average of the voting-age citizens from 2018 to 2022 in certain counties, that would not demonstrate that the active voter list contains ineligible voters. Thus, the allegation that "10 of Oregon's 36 counties had more *active* registrations than citizens over the age of 18," Am.

---

[8] The EAC's survey instrument instructs:

> For question A9a, report the total number of voters removed from the voter registration rolls in your jurisdiction in the period between the close of registration for the November 2020 general election and the close of registration for the November 2022 general election. Note that <u>this question asks for those removed from the list of registered voters, not those moved to an "inactive" registration status.</u>

*See* Marshall Decl., Attach. 3 at 5 (2022 Election Administration and Voting Survey (EAVS) at 10) (underlining modified).

[9] This fact is subject to judicial notice. *See* U.S. Census Bureau, Citizen Voting Age Population by Race and Ethnicity (Jan. 23, 2024), https://www.census.gov/programs-surveys/decennial-census/about/voting-rights/cvap.html; U.S. Census Bureau, Using 1-Year or 5-Year American Community Survey Data (Sept. 2020), https://www.census.gov/programs-surveys/acs/guidance/estimates.html.

[10] *See generally* Portland State University Population Research Center, Population Estimates for Oregon and Counties (Vintage 2024), https://drive.google.com/uc?export=download&id=1R9gsw5ucUhbtY-fdXGvLZvvhjFc7Cr28 (showing that Crook County grew from 24,912 on July 1, 2020 to 26,366 on July 1, 2024, a 5.8% increase).

Page 18 -  DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
BM2/jt3

Compl. ¶ 39, does not give rise to a plausible claim of injury. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).)

Moreover, Plaintiffs' allegation that this "is an indication that a jurisdiction is not taking steps required by law" to maintain their list of eligible voters is conclusory. The amended complaint does not allege how greatly any county's October 2024 registration numbers diverge from the Census's 2018–2022 population estimates. Nor does their conclusory allegation account for the reality that NVRA *requires* jurisdictions to wait to cancel registrations under certain circumstances. *See* 52 U.S.C. § 20507(d)(1)(B)(ii).

In short, Plaintiffs allege no facts that suggest, let alone make plausible, their conclusory allegation that Oregon's active voter list includes voters that NVRA requires the state to remove under "a general program that makes a reasonable effort" to do so. 52 U.S.C. § 20507(a)(4).

### b. The Constitution Party's voter outreach allegations are outside the zone of interests that the NVRA is designed to protect.

The Constitution Party also cannot meet the requirements of the "zone of interests" test to bring their list maintenance claims. That test requires, among other things, "that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014). The zone-of-interests requirement applies to "all statutorily created causes of action…." *Id.* at 129. Congress may expand the zone of interests of a statute by "expressly negat[ing]" the zone-of-interests limitation. *Id.* at 129–30 ("[T]he limitation *always* applies and is never negated, but … our analysis of certain statutes will show that they protect a more-than-usually 'expansive' range of interests.").

To determine whether a court lacks jurisdiction under the zone-of-interests test, a court evaluates whether the alleged injury "'is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Bennett v. Spear*, 520 U.S. 154,

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

163 (1997) (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)). The zone of interests varies by statute, and courts examine the provisions of the applicable statute to determine how broad or narrow the zone of interests is. *Id.* Specifically, courts examine the text of the private right of action provision and any findings or purposes that Congress included in the law. *Id.* at 164 (discussing the private right of action provision in the Endangered Species Act); *Lexmark Int'l, Inc.*, 572 U.S. at 131 (discussing the "detailed statement of the statute's purposes" codified in the Lanham Act).

Here, the Constitution Party alleges that its ability to conduct voter outreach is injured by Defendants' failure to comply with the voter list maintenance provision of the NVRA. Am. Compl. ¶¶ 100–01 (alleging that the Constitution Party's "ability to contact eligible Oregon voters is interfered with and made more difficult" and that it "waste[s] significant time, effort, and money trying to contact voters" who have moved or are deceased). The Constitution Party further describes the voter outreach injury as a monetary loss for mailings that are "returned as undeliverable because the addressee no longer lives at the stated address," Am. Compl. ¶¶ 106–108, as well as having "had to adjust its activities by conducting fewer mailings than it otherwise would," Am. Compl. ¶ 109. It also alleges that it has wasted its "scarce volunteer and organizational resources" in its door-to-door outreach activities because the addresses it uses are "not accurate or current." Am. Compl. ¶¶ 112, 115. Additionally, it alleges that, when it receives a "supportive email, it locates the author's name on Oregon's voter list" to ensure that the author is an Oregon voter and they can effectively connect with the voter about local issues. Am. Compl. ¶ 117. Finally, it alleges that its impaired ability to reach voters puts the Constitution Party at risk of losing its minor political party status. Am. Compl. ¶¶ 121–26. The alleged voter outreach injury is not within the zone of interests that the NVRA was designed to protect.

The findings and purposes provision of the NVRA demonstrates that the NVRA is not designed to protect political parties' voter outreach efforts. That provision states three findings: the right to vote is a fundamental right; all levels of government have a duty to "promote the

Page 20 -  DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
BM2/jt3

exercise of that right"; and "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation … and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a). The NVRA also expressly establishes four purposes:

> (1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for federal office;
> (2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office;
> (3) to protect the integrity of the electoral process; and
> (4) to ensure that accurate and current voter registration rolls are maintained.

52 U.S.C. § 20501(b). Those listed purposes illustrate that the goals of the NVRA are to increase voter registration and participation, to protect the integrity of elections, and to maintain accurate voter registration lists. Those purposes do not include supporting political parties in voter outreach efforts to help political parties elect their candidates, promote their platform, or maintain party status. *See* Am. Compl. ¶ 96 (describing the Constitution Party's voter outreach efforts). Certainly, political parties may incidentally benefit from the NVRA's list maintenance requirement, but nothing in the findings and purposes provision indicates that the zone of interests protected by the NVRA includes facilitating the efficiency of a political party's voter outreach efforts. Although Plaintiffs allege a violation of the voter roll maintenance provision, the alleged injury to the Constitution Party is limited to having to spend more resources on voter outreach and having to register additional voters as party members. That is not the kind of injury protected by the NVRA. The zone of interests protected by the NVRA is limited to voter registration, election integrity, and voter roll maintenance.

The NVRA's private right of action does not expand that zone of interests. The private right of action provides that "[a] person who is aggrieved by a violation of this chapter … may bring a civil action" after providing proper notice and waiting a required period of time. 52 U.S.C. § 20510(b). That provision indicates that Congress did not intend to expand the zone of

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

interests of the NVRA—it required the person bringing suit to be "aggrieved" by the alleged violation, but it did not use terms that indicate an expansion of the zone of interests of the NVRA.[11] *See Bennett*, 520 U.S. at 164 (discussing the breadth of the private right of action in the Endangered Species Act as compared to more restrictive phrases that Congress uses to confer a private right of action in other laws); *id.* (comparing language from 16 U.S.C. § 1540(g) ("any person may commence a civil suit" (Endangered Species Act)), with 42 U.S.C. § 9124(a) ("any person having a valid legal interest which is or may be adversely affected" (Ocean Thermal Energy Conversion Act)), and 15 U.S.C. § 797(b)(5) ("[a]ny person suffering legal wrong" (Energy Supply and Environmental Coordination Act)), and 7 U.S.C. § 2305(c) ("[a]ny person injured in his business or property" (Unfair Trade Practices Affecting Producers of Agricultural Products))). In fact, the NVRA specifically requires a person to be "aggrieved" by an NVRA violation. "Aggrieved" is defined, as relevant here, as "having legal rights that are adversely affected; having been harmed by an infringement of legal rights." *Black's Law Dictionary* (12th ed. 2024); *see also Merriam-Webster Dictionary* (online ed. 2024) (defining "aggrieved" as "suffering from an infringement or denial of legal rights"). Because the NVRA does not protect the efficiency of a political party's voter outreach programs, the limitation on who may bring a civil lawsuit cannot be interpreted to expand the zone of interests to protect a political party from an alleged injury to its voter outreach programs.

---

[11] The Fifth Circuit has held that the use of the word "aggrieved" was sufficient to "extend standing under the [NVRA] to the maximum allowable under the Constitution." *Ass'n Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 362–65 (5th Cir. 1999). However, more recently, the Supreme Court clarified that the zone-of-interests test is plaintiff-specific—in each case, a court must examine whether Congress authorized the plaintiff *in that case* to sue for its injury. *Lexmark Int'l, Inc.*, 572 U.S. at 128–29 ("[T]he question this case presents is whether [this plaintiff] falls within the class of plaintiffs whom Congress has authorized to sue under [the relevant statute].").

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**B.     This Court should dismiss the public records claim because Plaintiffs did not provide the notice required by 52 U.S.C. § 20510(b)(1)–(2) (Count II).**

The NVRA "includes a notice provision that requires an aggrieved person, in most circumstances, to notify state officials of possible violations of the statute before filing suit." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1035 (9th Cir. 2015), *overruled on other grounds, Arizona All.*, 117 F. 4th at 1178. Specifically, NVRA provides that "[a] person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1). "If the violation is not corrected within 90 days after receipt of a notice under paragraph (1), … the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." 52 U.S.C. § 20510(b)(2). That waiting period is shortened or eliminated "[i]f the violation *occurred* within" 120 days or 30 days of a federal election, respectively. 52 U.S.C. § 20510(b)(2)–(3) (emphasis added). Lack of prior notice requires dismissal for failure to state a claim. *See Nat'l Council of La Raza*, 800 F.3d at 1042 (describing notice as a "statutory standing" requirement); *Jud. Watch, Inc. v. Griswold*, 554 F. Supp. 3d at 1105 ("The notice requirement is a pre-requisite to suit that must be pled in order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure."); *see also Pub. Int. Legal Found. v. Boockvar*, 370 F. Supp. 3d 449, 457 (M.D. Pa. 2019).

Here, Plaintiffs allege that the Secretary of State violated the NVRA on September 15, 2023, when her staff estimated it would require 5,000 hours to provide the records Plaintiffs requested. Am. Compl. ¶ 74. Doing so, they argue, amounts to failing to "maintain[] … and mak[e] available" records "for public inspection and, where available, photocopying at a reasonable cost…." 52 U.S.C. § 20507(*i*)(1). But Plaintiffs never notified the Secretary that they intended to sue her for such a violation.

Instead, Plaintiffs sent an initial notice of their list maintenance claim along with a request for records. Am. Compl. ¶ 73. Judicial Watch sent numerous subsequent letters threatening suit on its list maintenance claims. *See* Marshall Decl., Attach. 1. But Plaintiffs never

Page 23 -  DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
BM2/jt3

provided notice that the Secretary of State was violating the public records provision of the NVRA, nor does their complaint allege that it did so. Although the Ninth Circuit has held that a plaintiff can avoid the notice requirement by "plausibly alleging that a[n] *ongoing, systematic* violation is occurring … when the complaint is filed within 30 days of a federal election," *Nat'l Council of La Raza*, 800 F.3d at 1044 (emphasis added), that does not apply here, where Plaintiffs allege a discrete NVRA violation based on the Secretary's August 2023 communication.

Judicial Watch has been previously admonished for failing to give defendants the statutorily required notice before litigating their public records claims. *Jud. Watch, Inc. v. Pennsylvania*, 524 F. Supp. 3d 399, 408–10 (M.D. Pa. 2021). In that case, as here, Judicial Watch sent a notice of alleged violation of NVRA's substantive list maintenance provisions along with a public records request. There, like here, Judicial Watch asserted both the list maintenance claim and, without any further notice, a violation of NVRA's public records requirements. The court explained that it "would 'defy logic and frustrate the purpose of the NVRA's notice provision' to permit Judicial Watch's [initial] letters to 'serve such a dual purpose—that is, make an initial request for records and at the same time notify the records keeper of his or her failure to satisfy that request.'" *Id.* at 410.

This notice requirement is more than technical. Public records requests of all kinds frequently require conferral and discussion between the requestor and the agency to clarify exactly what is being requested, consider the manner in which the agency stores and accesses its records, and determine whether other records (of which the requestor may be unaware) could meet the requestor's needs for information more efficiently. Notice is not only statutorily required, it also facilitates that problem-solving process. Acting as Plaintiffs did here—making an initial request, failing to even respond to the agency's cost estimate, and then filing suit in federal court more than a year later—is the antithesis of the ordinary public records process and what the statute requires.

Page 24 -  DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
BM2/jt3

The notice requirement mirrors other provisions of federal law that are intended to ensure there is an actual dispute before litigation ensues. Under the Freedom of Information Act, a plaintiff must exhaust administrative remedies, including appealing to the head of an agency, before suing. *See Aguirre v. NRC*, 11 F. 4th 719, 726 (9th Cir. 2021). The Federal Rules of Civil Procedure require conferral before filing discovery motions. *See* Fed. R. Civ. P. 26(c)(1) (protective order); Fed. R. Civ. P. 37(a)(1) (motions to compel). This Court's local rules require the same for nearly all motions. L.R. 7-1. The NVRA's notice provision is no different: unless an alleged violation of the statute occurs on the eve of an election, a prospective plaintiff must give prior notice to the state to allow it an opportunity to remedy the alleged violation.

Because Plaintiffs failed to give notice of their public records claim as the statute requires, that claim should be dismissed for failure to state a claim.

## V.    CONCLUSION

Plaintiffs' First Amended Complaint should be dismissed.


DATED January 24, 2025.

Respectfully submitted,

DAN RAYFIELD
Attorney General


*s/ Brian Simmonds Marshall*
BRIAN SIMMONDS MARSHALL #196129
Senior Assistant Attorney General
KATE E. MORROW #215611
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Brian.S.Marshall@doj.oregon.gov
Kate.E.Morrow@doj.oregon.gov
Of Attorneys for Defendants


Page 25 -  DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
BM2/jt3