**HARMEET K. DHILLON**
Assistant Attorney General
**MICHAEL E. GATES**
Deputy Assistant Attorney General
**MAUREEN S. RIORDAN**
Acting Chief, Voting Section
**TIMOTHY F. MELLETT**
**HARIN C. SONG**
**ROSHNI SHIKARI**
Trial Attorneys
Civil Rights Division
950 Pennsylvania Avenue 4CON
Washington, DC 20530
Timothy.F.Mellett@usdoj.gov
Tel. (202) 307-2767

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

**EUGENE DIVISION**

| | |
|---|---|
| JUDICIAL WATCH, INC.; CONSTITUTION PARTY OF OREGON; SUNI DANFORTH; and HANNAH SHIPMAN,<br><br>Plaintiffs,<br><br>v.<br><br>TOBIAS READ, in his official capacity as the Oregon Secretary of State; and THE STATE OF OREGON,<br><br>Defendants. | Civil Case No. 6:24-cv-1783-MC |

**STATEMENT OF INTEREST OF THE UNITED STATES**

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a

1

suit pending in a court of the United States[.]" This case presents important questions regarding enforcement of the National Voter Registration Act, 52 U.S.C. §§ 20501-11 (the "NVRA"). Congress has vested the Attorney General with authority to enforce the NVRA on behalf of the United States. *See* 52 U.S.C. § 20510(a). Accordingly, the United States has a substantial interest in ensuring proper interpretation of the NVRA. The United States submits this Statement of Interest for the limited purpose of addressing the requirements under the NVRA for states to maintain and make available for public inspection certain records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, *id.* § 20507(i). The United States takes no position on any other issue before this Court.

## I.   Procedural Background

On October 23, 2024, Plaintiffs, Judicial Watch, Inc., the Constitution Party of Oregon, Suni Danforth, and Hannah Shipman ("Plaintiffs"), sued then-Secretary of State of Oregon, Lavonne Griffin-Valade[1], in her official capacity, and the State of Oregon ("Defendants"). ECF No. 1. The complaint alleged that the Oregon Secretary of State and State of Oregon failed to comply with the state's obligations under the NVRA: i) to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" the death or a change in residence of registrants, under 52 U.S.C. § 20507(a)(4) ("Section 8(a)(4)"), and ii) to "maintain for at least 2 years" and "make available for public inspection . . . all records concerning the implementation of programs and activities

---

[1] Tobias Read was sworn in as Oregon's Secretary of State on January 6, 2025 and, as the current Oregon Secretary of State, takes the place of Secretary Griffin-Valade as a Defendant in this civil action.

conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, . . . [,]" under *id.* § 20507(i) ("Section 8(i)").

On January 10, 2025, the Plaintiffs filed the First Amended Complaint ("FAC"), ECF No. 12, which is the subject of the pending motion to dismiss. The FAC alleges the same claims under Sections 8(a)(4) and 8(i) of the NVRA as the original complaint, with some additional and revised factual allegations. *See* ECF No. 12-1, First Am. Compl., Ex. 1 (redline showing changes from Oct. 23, 2024, Complaint).

As relevant to this Statement of Interest, the FAC alleges that on August 4, 2023, Plaintiff Judicial Watch wrote a letter to former Defendant and Oregon Secretary of State Griffin-Valade on several NVRA-related subjects and requested seven categories of public records pursuant to Section 8(i) of the NVRA. ECF No. 12 at 15, ¶ 73. The FAC alleges that the second request in the letter sought a list "of the names and addresses of all persons to whom notices described in 52 U.S.C. § 20507(d)(2) [*i.e.*, Confirmation Notices] were sent, and information concerning whether or not each such person responded to the notice." *Id.* The letter also sought records relating to communications, list maintenance manuals, and audits. *Id.*

The FAC alleges that on September 15, 2023, Greg Bergerson, OCVR Support Desk Analyst in the Oregon Secretary of State's office, responded via email, stating, with respect to the second request:

> After internal review, we have identified significant additional labor cost to provide a full data set of returned voter notification cards (VNCs). Counties have historically used slightly different processes and have latitude to define some process steps in our current system. Researching this historical information would require significant consultation with county officials, including some who may have retired, and significant additional review of data by the SOS after such consultation. We estimate this work would take approximately 5,000 hours to complete due to the level of customization required for each of the 36 counties in Oregon.

*Id.* at 15, ¶ 74.

The FAC alleges that the above response "shows that Defendants have failed to comply with Section 8(i) and 8(i)(2) of the NVRA" and that the "NVRA and related federal regulations require Oregon, and not its counties, cities, or local authorities, to maintain and make available statewide records of Confirmation Notices sent and of responses to them." *Id.* at 15-16, ¶¶ 75-76 (citing 52 U.S.C. § 20507(i); 11 C.F.R. § 9428.7(a), (b)(8)). The FAC further alleges that "Defendant Griffin-Valade cannot fulfill her statutory duty as Oregon's Chief State Election Official to be responsible for the coordination of State responsibilities under the NVRA, unless she has access to local election authorities' list maintenance records, and, in particular, access to their data and statistics concerning the mailing and disposition of Confirmation Notices." *Id.* at 16, ¶ 78.

The FAC alleges that the NVRA "supersedes and preempts any Oregon law or practice" that "restricts Defendants' access to local election authorities' list maintenance records, including access to data regarding the mailing of and responses to Confirmation Notices"; that "diminishes the responsibility of the Chief State Election Official to coordinate State responsibilities under the NVRA"; or that "assigns ultimate responsibility" for "conducting NVRA-related tasks" or "performing NVRA-mandated public record obligations" to county, city, or local officials. *Id.* at 16-17, ¶ 79.

On January 24, 2025, the Defendants filed a motion to dismiss the First Amended Complaint (the "Motion"). ECF No. 13. On March 7, 2025, the Plaintiffs filed their opposition to the Motion, ECF No. 17, and on April 2, 2025, the Defendants filed a reply in support of their Motion, ECF No. 23. An oral argument hearing on the Motion is scheduled for June 18, 2025.

## II.     Statutory Background

Section 8 of the NVRA, 52 U.S.C. § 20507, establishes requirements for the administration of voter registration for elections for federal office in covered states, including

4

Oregon.  Section 8(a)(4) requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" the death of the registrant or "a change in the residence of the registrant, in accordance with subsections (b), (c), and (d)[.]" 52 U.S.C. § 20507(a)(4)(A)-(B).  Subsections (b), (c), and (d) set forth procedures and requirements governing the removal of ineligible voters from official lists of voters as part of a state's "program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office[,]" *id.* § 20507(b).  State voter list maintenance programs must be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 (42 U.S.C. 1973 et seq.)[.]"  52 U.S.C. § 20507(b)(1); *see also* S. Rep. No. 103-6 at 31 (Feb. 25, 1993) ("The term 'uniform' is intended to mean that any purge program or activity must be applied to an entire jurisdiction."); H.R. Rep. No. 103-9 at 15 (Feb. 2, 1993) (same).

       Section 8(d) of the NVRA provides that a "State shall not remove the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence unless the registrant" i) "confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered" or "has failed to respond to a notice" described in Section 8(d)(2) and ii) "has not voted or appeared to vote . . . in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice." 52 U.S.C. § 20507(d)(1).  Section 8(d)(2) sets forth specific requirements for the notice ("Confirmation Notice") to be sent to registrants, and Section 8(d)(3) provides that a "voting registrar shall correct an official list of eligible voters in elections for Federal office in accordance with change of residence information obtained in conformance with [subsection 8(d)]." *Id.* §§ 20507(d)(2)-(3).

    Section 8(i) of the NVRA specifically provides that:

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

*Id.* § 20507(i)(1). Section 8(i)(2) further specifies:

> The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

*Id.* § 20507(i)(2).

    Section 10 requires each state to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities" under the NVRA. *Id.* § 20509.

### III.    Argument

    A. <u>States are responsible for Section 8(i)'s requirements for maintaining and making available records</u>.

    By its plain terms, the NVRA identifies one entity, the state, that is required to carry out obligations for voter registration administration, *id.* §§ 20507, 20509, and, specifically under Section 8(i), to perform two actions: (1) "maintain" for at least two years records related to activities conducted to ensure the accuracy of eligible voter lists, and (2) "make available" those records to the public, *id.* § 20507(i)(1). "The NVRA centralizes responsibility in the state and in the chief elections officer, who is the state's stand-in." *Scott v. Schedler*, 771 F.3d 831, 839 (5th Cir. 2014) (holding that "coordination" of state responsibilities under Section 10 of the NVRA, 52 U.S.C. § 20509, includes enforcement power). The NVRA "speaks in terms of the responsibilities of 'each state.'" *Scott*, 771 F.3d at 839 (citing Sections 4(a) and 7(a)(1) of

6

NVRA [52 U.S.C. §§ 20503(a), 20506(a)(1)]). "This choice of words reflects a policy choice that responsibility should be centralized rather than fragmented." *Id.* (citing *Harkless v. Brunner*, 545 F.3d 445, 452 (6th Cir. 2008) ("[T]he entire Act, including other subsections, speaks in terms of state responsibilities; what is noticeably missing is any mention of county, municipal, or other local authorities.")).

Consistent with other provisions of Section 8 and other sections of the NVRA, Section 8(i) articulates the obligations of each state, and not each state's political subdivisions. *Compare* 52 U.S.C. § 20507(i)(1) ("Each State shall maintain for at least 2 years and shall make available for public inspection" certain records concerning the implementation of programs conducted to ensure the accuracy and currency of official lists of eligible voters) *and id.* § 20507(a)(4) ("In the administration of voter registration for elections for Federal office, each State shall . . . conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by reason of the death or a change in residence of the registrant) *and id.* §§ 20506(a)(1) ("Each State shall designate agencies for the registration of voters in elections for Federal office."), 20506(a)(2) (specifying the offices in the state that "[e]ach State shall designate as voter registration agencies").

Courts have found the plain language of Sections 8(a)(4) and 7, which use the same "Each State shall . . ." formulation as Section 8(i), to set forth non-delegable responsibilities of the state, even if counties or local officials are involved in carrying out tasks that the states are responsible for under the NVRA. *See United States v. Missouri*, 535 F.3d 844, 849-50 (8th Cir. 2008) (construing Section 8(a)(4)'s requirement for states to conduct a general program that makes a reasonable effort to remove the names of ineligible voters and holding that "[u]nder the NVRA's plain language, Missouri may not delegate the responsibility to conduct a general program to a local official and thereby avoid responsibility if such a program is not reasonably

7

conducted"); *Harkless*, 545 F.3d at 452-53 (holding that each state must designate voter registration agencies and ensure they complete the required tasks pursuant to Section 7 of the NVRA, 52 U.S.C. § 20506, and that Ohio's chief election official, the secretary of state, is responsible for implementation and enforcement of the NVRA requirements).

The reasoning of the appeals courts in *Missouri* and *Harkless* is instructive here. In *Missouri*, the Eighth Circuit considered what specific actions states must take under the NVRA and whether and how some provisions "envision delegation[.]" *Missouri*, 535 F.3d at 849-51. The court concluded that Section 8(a)(4)'s list maintenance requirements were non-delegable, as the plain language of the provision "clearly envisions Missouri will actively oversee the general program[,]" *id.* at 849-50 (citing Webster's Third New Int'l Dictionary definition of the verb "conduct"), and that any lack of compliance with the NVRA by local election agencies "remains relevant to determining whether or not Missouri is reasonably 'conduct[ing] a general program[,]'" *id.* at 851.

In *Harkless*, the Sixth Circuit, consistent with the court in *Missouri*, concluded that states were responsible for ensuring that local agencies provided voter registration services and assistance as required by Section 7 and, as part of their "coordination of State responsibilities" under Section 10, states were responsible for overall implementation and enforcement of the program under Section 7. *Harkless*, 545 F.3d at 452. The court rejected the view that once the state designated local offices as voter registration agencies under Section 7, the responsibility of the state secretary of state ended and it was up to the designated office to carry out the remaining tasks. *Id.* Otherwise, "[i]f every state passed legislation delegating NVRA responsibilities to local authorities, the fifty states would be completely insulated from any enforcement burdens, even if NVRA violations occurred throughout the state." *Id.* (footnote omitted); *see also United States. v. New York*, 255 F. Supp. 2d 73, 79 (E.D.N.Y. 2003) (in case involving NVRA Section 7

8

provisions, "[i]t would be plainly unreasonable to permit a mandatorily designated State agency to shed its NVRA responsibilities because it has chosen to delegate the rendering of its services to local municipal agencies").

The *Harkless* court further reasoned that the NVRA provisions requiring private citizens aggrieved by a violation of the NVRA to provide written notice of the violation to the state's chief election official prior to filing suit, under 52 U.S.C. § 20510(b), and requiring all federal executive branch agencies to cooperate with states in carrying out Section 7(a), *id.* § 20506(b), "would be pointless if states could abdicate their responsibilities by delegating them to local officials." *Harkless*, 545 F.3d at 452-53.

For the reasons discussed above, Section 8(i) defines non-delegable responsibilities of the state. First, Section 8(i) uses the same plain language as Sections 7 and 8(a)(4) to set forth the obligation of each state to maintain and make available for public disclosure records related to voter list maintenance programs and activities. Like "conduct," the word in the statute that the court in *Missouri* found was indicative of a non-delegable obligation, the terms "maintain" and "make available" are "active verb[s.]" *See Missouri*, 535 F.3d at 850 (analyzing the term "conduct" in Section 8(a)(4) of NVRA); *see also* Oxford English Dictionary (defining "maintain" to include "[t]o keep up, preserve, cause to continue in being (a state of things, a condition, an activity, etc.); . . . to guard from loss or deterioration"), https://www.oed.com/dictionary/maintain_v?tab=meaning_and_use#38643862; Merriam-Webster Dictionary (defining "maintain" to include to "preserve from failure or decline"), https://www.merriam-webster.com/dictionary/maintain.

Second, Section 10's requirement for each state to designate a chief election official responsible for coordination of state responsibilities under the NVRA reinforces the specific obligations that NVRA provisions, including Section 8(i), place on each state. 52 U.S.C.

§ 20509; s*ee Harkless*, 545 F.3d at 452.  Third, states cannot insulate themselves from those responsibilities by delegating them to counties or local authorities, even if subdivisions of the state have some role in carrying out tasks in furtherance of NVRA responsibilities.  *See Missouri*, 535 F.3d at 850-51; *Harkless*, 545 F.3d at 452.  Fourth, the NVRA provision requiring notice by an aggrieved person to the chief election official of the state of a violation to provide the opportunity to remedy the issue would be rendered futile if a state could delegate its Section 8(i) responsibilities.  *See Harkless*, 545 F.3d at 452-53; 52 U.S.C. § 20510(b).

Finally, where Section 8 contemplates a specific involvement of political subdivisions or local officials, it does so explicitly.  *See* 52 U.S.C. § 20507(g)(5) (requiring the "chief State election official" to notify "the voter registration officials of the local jurisdiction in which an offender resides" of information received about a felony conviction in a federal court from a United States attorney).

    B. <u>To the extent Oregon state laws or practices delegate the state's Section 8(i) responsibilities to subdivisions or local authorities, they are inconsistent with Congress' enactment of specific state obligations under the Elections Clause.</u>[2]

As discussed above, the state holds responsibility for Section 8(i)'s requirements and cannot delegate its responsibility, whether or not under state law the county clerks are primarily responsible for, and carry out, work involved in meeting those NVRA obligations.  The NVRA requires Oregon to maintain and make available for public inspection certain records under Section 8(i).  52 U.S.C. § 20507(i).  The FAC alleges that the state's response to the Plaintiffs' August 2023 request indicated that providing the requested records relating to Confirmation Notices under Section 8(i) "would require significant consultation with county officials,

---

[2] At this stage of the proceedings, where the factual record is not developed, the United States takes no position on whether the state's statutory scheme and practices amount to delegation of the state's responsibilities or meet the requirements of Section 8(i) of the NVRA.

including some who may have retired, and significant additional review of data by the [state secretary of state] after such consultation." ECF No. 12 at 15, ¶ 74.  To the extent that the state does not have in place and must fashion *ad hoc* methods to access and retrieve the records from the counties and ensure the records are preserved for at least two years, the state's laws and practices would not be consistent with the state's obligations under the NVRA.

As relevant to Section 8(i) of the NVRA, Oregon state law requires that the county clerks retain for two years "[c]opies of all notices and other correspondence issued under" sections 247.195, 247.292, 247.296, 247.563, and 247.570 of Oregon's Revised Statutes.  Or. Rev. Stat. § 247.580(1); *see also* Or. Admin. Code § 166-150-0035(15) (specifying minimum retention requirement for voter registration records).  Oregon state law also specifies that "[i]f the elector registration records of a county are mechanically maintained, the county clerk may satisfy" the record retention requirements of § 247.580(1) by maintaining for two years "[c]omputer listings of electors to whom the clerk issued notices or any other correspondence under [§§ 247.195, 247.292, 247.296, 247.563, and 247.570] and facsimile copies of notices and correspondence" or "[m]icrofilm records of the listings and copies."  Or. Rev. Stat. § 247.580(2)(a)-(b).

Under the NVRA, to the extent a state and its chief election official, "the state's stand-in," *Scott*, 771 F.3d at 839, rely on the state's counties and county clerks to maintain and make available voter list maintenance program-related records as required by Section 8(i), including "lists of the names and addresses of all persons to whom [Confirmation Notices under Section 8(d)(2)] are sent, and information concerning whether or not each such person has responded to the notice as of the date [of inspection]," 52 U.S.C. § 20507(i)(1)-(2), the state and its chief election official, here, the secretary of state, must have a system or method for accessing or obtaining the records from all of the counties in order to fulfill the state's obligations under the NVRA to "maintain for at least 2 years" and "make available" the records.  *Id.* § 20507(i).  The

11

state must have procedures and practices in place "to guard from loss or deterioration[,]" *see* Oxford English Dictionary (definition of "maintain"), and to make available the records as required by Section 8(i) of the NVRA.

State delegation, by law or practice, of the state's responsibilities under Section 8(i) to maintain and provide certain records concerning programs to ensure the accuracy of eligible voter lists cannot supplant the NVRA framework. Congress enacted the NVRA pursuant to its authority under the Elections Clause to make laws, or alter laws promulgated by the states, governing the "Times, Places and Manner of holding Elections for Senators and Representatives[.]" U.S. Const. Art. I, § 4, cl. 1; *Harkless*, 545 F.3d at 454 ("Article I section 4 specifically grants Congress the authority to force states to alter their regulations regarding federal elections.") (quoting *Ass'n of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833, 836 (6th Cir. 1997)) (internal quotation mark omitted). Thus, if the NVRA, a federal act, and state law "do not operate harmoniously in a single procedural scheme for federal voter registration, then Congress has exercised its power to 'alter' the state's regulation, and that regulation is superseded." *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012) (en banc), *aff'd sub nom. Arizona v. Inter Tribal Council of Arizona, Inc.* ("*ITCA*"), 570 U.S. 1 (2013); *see also Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1199 (10th Cir. 2014) ("In *ITCA*, the Court clearly held that Congress' Elections Clause powers preempt state laws governing the 'Times, Places and Manner' of federal elections, including voter registration laws."); *accord Harkless*, 545 F.3d at 454-55 ("In ratifying Article I, Section 4, the states not only gave Congress plenary authority over federal elections but also explicitly ensured that all conflicts with similar state laws would be resolved wholly in favor of the national government.") (footnote omitted).

The NVRA requires *each state,* not the counties within each state, to "maintain" and "make available for public inspection" certain records regarding activities conducted to ensure

accurate and current lists of eligible voters, 52 U.S.C. § 20507(i), and states cannot delegate, by law or practice, those responsibilities to counties or officials thereof. Accordingly, to the extent that Oregon's laws or practices thereunder impede the state's ability, or delegate the state's responsibility, to comply with the NVRA's requirements to maintain and provide records under Section 8(i), the state laws must yield. *See ITCA*, 570 U.S. at 8-9.

### IV.   Conclusion

The United States respectfully requests the Court's consideration of this Statement of Interest and welcomes the opportunity to provide further assistance at the Court's request.

Date: June 6, 2025

<div style="margin-left:auto;">

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

MICHAEL E. GATES
Deputy Assistant Attorney General
Civil Rights Division


s/ Timothy Mellett
MAUREEN S. RIORDAN
Acting Chief, Voting Section
TIMOTHY F. MELLETT
HARIN C. SONG
ROSHNI SHIKARI
Attorneys, Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue 4CON
Washington, D.C. 20530
Telephone: 202-307-2767
Timothy.F.Mellett@usdoj.gov

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

<div style="text-align: right;">

s/ Timothy Mellett
Timothy F. Mellett

</div>